**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JUDITH MITCHELL,

                        Plaintiff,

         - against -

TOWN OF SOUTHAMPTON, SOUTHAMPTON
TOWN BOARD, VINCENT CANNUSCIO, in his
individual and official capacity, JIM DREW, in his
individual and official capacity, STEVE HALSEY,
in his individual and official capacity, MARTHA
ROGERS, in her individual and official capacity,
and PATRICK HANEY, in his individual and
official capacity.

                      Defendants.
-----------------------------------------------------------------X

**ORDER**

CV 03-0445 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      This action was commenced by Plaintiff in 2003 against the Town of Southampton and

certain Town Board Members.  Plaintiff alleges that Defendants discriminated against her in the

hiring process for an Assistant Town Attorney ("ATA") position because she was African-

American, in violation of 42 U.S.C. § 2000e, §§ 1981, 1983, 1985 and N.Y. Exec. Law § 296.  On

March 4, 2004, Judge Platt denied Defendants' motion to dismiss the complaint on the basis of

legislative immunity. [DE 28]  Defendants appealed that decision and in November 2005, the

Second Circuit affirmed. [DE 40]  On September 5, 2006, the parties appeared for an initial

conference.   The issue presently before me is the proper scope of discovery in light of

Defendants' stated intention of  filing a motion for summary judgment on the basis of absolute

immunity following very limited discovery.

The parties' positions on this issue are at opposite ends of the spectrum. Defendants have argued that a single deposition of former Southampton Town Attorney David J. Gilmartin, Jr. is all that is necessary to establish that the role of an ATA is a policymaking role, and, as such, Defendants are entitled to absolute immunity. [DE 44] Plaintiff maintains that she is entitled to full discovery in this matter because (1) Defendants' request is an "attempt to distract this Court from the proper sequence that is to be followed whenever a defendant seeks the protection of, or asserts the defense of legislative or absolute immunity;" (2) this action was commenced more than three years ago and Plaintiff is "concerned that with the passage of time documents may become displaced and witnesses memories will begin to fade;" (3) full discovery is more in line with the decision of the Second Circuit; and (4) it would be prudent and a more efficient use of the Court's time to allow full discovery. Plaintiff states that she "seeks to depose all of the named defendants who were the decision makers who failed to hire her and the only individuals . . . who can attest to whether they were acting in their legislative capacity and whether ATAs are policy makers." [DE 46] Neither position is entirely persuasive.

After hearing argument from both sides on September 5, 2006, reviewing the letters submitted by the parties, considering the decisions of the District Court and Second Circuit on this issue as well as relevant case law, I have concluded that discovery shall proceed on a limited basis at this time for the reasons stated below. However, more is needed than the single deposition offered by Defendants.

Judge Platt's denial of Defendants' motion to dismiss on the grounds of absolute immunity was premised upon his finding that decisions concerning the hiring of ATAs are "discretionary personnel decisions" and "[a]s such, these personnel decisions are not shielded by legislative

2

immunity." Memorandum and Order at 8; *see also Hershell Gill Consulting Engineers, Inc. v. Miami-Dade County,* 333 F. Supp. 2d 1305, 1335 (S.D. Fla. 2004) ( "legislators' administrative acts, such as employment decisions, are not entitled to legislative immunity even though those decisions are made through votes").[1] Judge Platt did not foreclose the possibility of a finding of legislative immunity in the future, pointing out that "[w]ith minimal discovery completed . . . the Court is only saying at this point that the individual defendants are not entitled to legislative immunity." Memorandum and Order at 9. Thus, additional discovery at this time regarding the nature of the actions taken by Defendants is entirely consistent with, and indeed, contemplated by, Judge Platt's decision. There is no suggestion in the Memorandum and Order that discovery should be limited to a single deposition to develop the record concerning the role of the ATA.

Further, in affirming Judge Platt's denial of Defendants' motion to dismiss, the Second Circuit stated "[w]e need not reach the question of whether the 'policymaker doctrine' applies outside the context of the First Amendment because the defendants-appellants failed to introduce into the record any evidence upon which we could base a finding that the jobs in question constituted policymaking jobs." Second Circuit Summary Order at 3. A fair reading of the Second Circuit's decision suggests that as a threshold matter in support of their defense of absolute immunity, Defendants need to establish that the role of the ATA was a policymaking one; however, the inquiry does not end there. The issue of whether the policymaker doctrine applies outside the context of the First Amendment, while not before the Second Circuit, is relevant in light of Defendants' anticipated motion for summary judgment on the issue of absolute

---

[1] In *Hershell Gill*, the Court concluded employment decisions could, however, be protected by qualified immunity. *See id.* at 1335.

immunity. As noted by the Second Circuit in *Adler v. Pataki,* 185 F.3d 35, 47 (2d Cir. 1999), "a policy-making employee vulnerable to discharge solely because of his political affiliation, nonetheless has some constitutional protection against a discharge impermissibly motivated by other factors." *Id.* Similarly, here, even if Defendants are able to establish that the role of the ATA is a policy-making one, Plaintiff is arguing, in light of the allegations in the complaint, that the decision was motivated by other factors. In the interest of judicial economy, the most prudent manner in which to proceed is to allow Plaintiff to explore Defendants' motivation in reaching the hiring decisions prior to Defendants' filing a motion for summary judgment.

Plaintiff's reliance on *Saucier v. Katz*, 522 U.S. 194 (2001) for the proposition that she is entitled to ***full*** discovery at this point in the action is misplaced. *Saucier* sets forth the proper inquiry to be made by the Court in evaluating a claim of qualified immunity. *See* 533 U.S. 194 (2001). As discussed in *Magilton v. Tocco,* 379 F. Supp. 2d 495 (S.D.N.Y. 2005), "[f]irst the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, a constitutional infraction was committed," and next, "the court must decide whether a reasonable official in defendants' position ought to have known he was violating plaintiff's constitutional rights by doing what plaintiff alleges he did." *Id*. at 509. In *Magilton,* Judge McMahon pointed out that in considering defendants' motion for summary judgment on the grounds of qualified immunity, the court "must presume that the plaintiffs' version of events is true" even where discovery was complete. *Id*. at 509. Indeed, the *Magilton* decision, in reliance upon *Saucier*, suggests that discovery is entirely unnecessary in connection with a defense of qualified immunity. Thus, *Saucier* does not mandate full discovery in these circumstances. Further, *Saucier* makes clear that qualified immunity is "an entitlement not to . . . face the other

4

burdens of litigation." *Id.* at 201. This premise again weighs against Plaintiff's claim that she is entitled to full discovery at this point in time. Defendants here, however, have not yet engaged in motion practice seeking dismissal on the grounds of qualified immunity.

There is a substantial line of case law from the Supreme Court which establishes that whether an official is entitled to absolute or qualified immunity depends on the nature of the function the official carried out. *See e.g.*, *Kalina v. Fletcher*, 522 U.S. 118 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "[I]mmunity is justified and defined by the functions it protects and serves, not by the persons to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). As one well-known commentator has observed, "[b]ecause the courts' approach to immunities is functional rather than titular, an official may be absolutely immune from liability with respect to one function but enjoy only qualified immunity with respect to another." 1A MARTIN A. SCHWARTZ, SECTION 1983: CLAIMS AND DEFENSES § 9.02 (4th ed. 2006). Generally, under this "functional" approach, legislative officials engaged in hiring, promoting, firing and other individual employment decisions have been found to be performing administrative acts that do not fall under the umbrella of legislative immunity. *Harhay v. Town of Ellington*, 323 F.3d 206 (2d Cir. 2003); *Jessen v. Town of Eastchester*, 114 F.3d 7 (2d Cir. 1997); *see also Yeldell v. Cooper Green Hospital*, 956 F.2d 1056 (11th Cir. 1992) (county commissioner's employment decision to fire, demote, or suspend specific employees were administrative acts not protected by legislative immunity).

On the bare record then before him, Judge Platt determined that the defendants were not entitled to legislative or absolute immunity based upon the tests set forth in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) and *Harhay v. Town of Ellington Bd. of Ed.*, 323 F.3d 206, 210 (2d Cir. 2003)

since the interviewing and selection of final ATA candidates "clearly involved discretionary personnel decisions." Memorandum and Order at 8. Although the Second Circuit declined to reach the issue whether the "policymaker doctrine" applies in this situation, the court noted that even if the submissions attached to the motion papers had been considered, they nonetheless lacked "*sufficient factual information* to make the necessary assessment." November 10, 2005 Summary Order at 4 (emphasis supplied). Significantly, the Second Circuit did suggest that one approach to dealing with this issue is to assess the factors set forth in *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994) against the circumstances involving ATA appointments in the Town of Southampton. There, in evaluating whether a highway superintendent's position was a policy-making position for which political affiliation was a valid employment consideration, the Court noted that

> [t]hese factors include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policy-makers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Vezzetti*, 22 F.3d at 486, (*citing Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993)). It seems appropriate, then, that the scope of discovery in the instant matter take into consideration these factors – as well as "any other relevant considerations" as stated in the November 10, 2005 Summary Order. The Summary Order, however, should not be interpreted to be a restriction solely to the sample factors in light of the added language concerning "other relevant considerations."

It is against this backdrop that the parties must flesh out the facts necessary to establish, within the limited parameters of discovery permissible here, whether the defendants are entitled to absolute immunity from suit in this case (if the contested conduct is a legislative act), or alternatively, whether qualified immunity is properly asserted as a defense (if the conduct is an executive or administrative act). The Second Circuit clarified in *Gordon v. County of Rockland*, 110 F.3d 886 (2d Cir. 1997) that the analysis of First Amendment protection under the Supreme Court's decisions in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) is a question of law. *Id.* at 889. However, in determining those questions of law on summary judgment, courts have engaged in an "independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated in *Branti*." *Regan v. Boogertman*, 984 F.2d at 580. In *Gordon*, plaintiff's counsel stated at oral argument that the test the Second Circuit used in *Vezzetti* is a factual analysis, and therefore an issue for the jury. 110 F.3d at 889, fn 3. The Second Circuit disagreed, noting that "[t]his argument confuses the idea of an *issue of fact* with that of a *fact-specific inquiry*. We believe the latter accurately characterizes the *Vezzetti* test" (emphasis in the original). *Id.* The parties here should take this guidance into account in finalizing a discovery plan.

The decision in *Adler v. Pataki* is equally important here since Plaintiff's complaint asserts a mixed motive case, although previous motion practice did not address this issue. Even a policy-making employee who may be vulnerable to termination because of her political affiliation "nonetheless has some constitutional protection against a discharge impermissibly motivated by other factors." *Adler*, 185 F.3d at 46-47. This premise is extended by analogy to Plaintiff's allegation that she was not hired because of her race as well as her political affiliation. Applying

*Adler v. Pataki*, if Plaintiff can persuade the trier of fact that race discrimination was a motivating factor in her not being appointed to an ATA position, her claim would not be barred even if it were determined that the ATA job was a policy-making position. *See* 185 F.3d at 47. Therefore, even if Defendants were to prevail on their absolute immunity defense, the case is not ended since an adverse employment action based on race, even for a policymaker's position, is impermissible. *Id.*

In the interest of judicial economy, then, discovery at this juncture will be limited to (1) issues relating to Defendants' claim of legislative immunity, and (2) a narrowly tailored inquiry into the specific issues related to Plaintiff's claim that her lack of appointment to an ATA position was racially motivated. The relevant inquiry does not end with establishing the nature of the position sought by Plaintiff. Rather, an inquiry into the nature of the acts performed by Defendants (i.e., were they administrative or legislative in nature) and the motive behind the hiring decision is appropriate at this point in time. This approach allows the Plaintiff to go forward with limited discovery while being mindful of the burdens discovery places upon Defendants who seek to establish a defense of absolute immunity through further motion practice.

Plaintiff's counsel is directed to confer with Defendants' counsel to formulate a proposed discovery plan specifically tailored to meet these directives. The proposed plan shall be filed no later than September 29, 2006. If the parties cannot agree on a plan after good faith discussions, then each party shall submit its own proposed plan to the Court by September 29, 2006, after which I shall issue a final discovery schedule.

**SO ORDERED.**

Dated: Central Islip, New York
      September 13, 2006

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge